UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: ___3/19/18___

CURTIS LAUDERDALE,

                    Plaintiff,

      - against -

CITY OF NEW YORK, ET AL.,

                Defendants.

15-cv-1486 (JGK)

MEMORANDUM OPINION
AND ORDER

**JOHN G. KOELTL, District Judge:**

The plaintiff, Curtis Lauderdale, brought this action pursuant to 42 U.S.C. § 1983 against the City of New York, Police Officer Lisa McCalla, Undercover Agent 276 ("UC 276"), Detective Antoine Chess, and Lieutenant Charles Hyland alleging claims for false arrest, malicious prosecution, and denial of the right to a fair trial. The defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56 dismissing all the claims against them.

I.

The following facts are undisputed unless otherwise noted.

For the purposes of their motion for summary judgment, the defendants -- accepting the plaintiff's facts as true, as they must -- have argued that this is a case of mistaken identity.

On the evening of April 25, 2014, and early morning hours of April 26, 2014, the New York City Police Department ("NYPD")

1

was running a "buy-and-bust" operation in Greenwich Village in Manhattan. UC 276 Dep. 34; UC 279 12. An undercover agent -- UC 276 -- was working on Bleecker Street to identify individuals selling drugs. Undercover Agent 279 ("UC 279") -- another undercover agent -- was working alongside UC 276 as a "ghost". UC 279 Dep. 13, 31. Officer McCalla was in a car near the location on Bleecker Street with two other officers. McCalla Dep. 12-13. UC 279 was speaking in real time via point to point radio to the team in the car, reporting descriptions of UC 276's movements and the people he was speaking with. UC 279 Dep. 24-25; McCalla Dep. 11-13, 29.

In the course of the undercover operation, in the early morning of April 26, 2014, UC 276 engaged an individual in front of Thunder Jacksons Bar in a drug-related conversation. UC 276 Dep. 17; UC 279 Dep. 13-14; Trial Tr. 36-37 (Bahrenburg Ex. H). UC 276 and the individual were standing in a group of people under the awning of the bar because it was raining hard. UC 276 Dep. 18-19; McCalla Dep. 30. UC 276 told the individual that he wished to purchase cocaine, and the individual responded that he could get UC 276 cocaine. UC 276 Dep. 20. The individual and UC 276 then walked to meet another individual, later identified as Ruben Rivera, and UC 276 told Rivera that he wished to purchase cocaine. UC 276 Dep. 20-22, 29-30; UC 279 Dep. 15. UC

2

276 then handed Rivera money and Rivera gave UC 276 a glassine of powder.  UC 276 Dep. 22.

During this time, UC 279 was communicating with the field team, reporting back the movements of UC 276 and the individuals with whom he was speaking. UC 279 Dep. 24-25; McCalla Dep. 13, 29-30.  UC 279 gave a description of the two individuals speaking with UC 276, including a description of their clothing and their location.  UC 279 Dep. 24-25; McCalla Dep. 30.  From her vantage point in the car, Officer McCalla was also able to observe UC 276, the individual and Rivera in conversation under the awning of Thunder Jacksons.  McCalla Dep. 25-27.

After the purchase was complete, UC 276 gave a positive buy sign to UC 279.  UC 276 Dep. 22; UC 279 Dep. 14, 16, 31-32.  UC 279 reported the positive buy to the field team, who approached and apprehended two individuals outside of Thunder Jacksons.[1]  UC 279 Dep. 14, 16; McCalla 29-30.  The two individuals who were apprehended were Rivera and the plaintiff.  When the field team moved in, UC 276 walked across the street.  UC 276 Dep. 25, 31.  While crossing the street, UC 276 observed Rivera and the plaintiff in police custody and gave a signal confirming that those were the two individuals who participated in the drug

---

[1] Neither the plaintiff nor the defendants have identified which officers physically apprehended the plaintiff and Rivera.

sale.  UC 276 Dep. 25, 31; UC 279 Dep. 23.  UC 279 relayed the
positive identification to the entire field team, including
McCalla, who was still in the car.  UC 279 Dep. 23;
McCalla Dep. 29-30.  UC 279 then crossed the street and
confirmed with UC 276 that the two individuals apprehended were
the correct individuals.  UC 279 Dep. 16; UC 276 Dep. 23.
Officer McCalla arrived on the scene after the plaintiff and
Rivera were already in handcuffs.  McCalla Dep. 27, 30; McCalla
Wade Hearing Tr. 23, 28.  The plaintiff was put in a police
vehicle and brought to a police precinct.  Defs.' Rule 56.1
Statement ¶ 25-26.

    The plaintiff does not dispute that UC 276 engaged in a
conversation with an individual outside Thunder Jacksons who
agreed to sell him cocaine and brought him to Rivera, who sold
him an imitation substance.  The plaintiff simply denies that he
was that individual.  The plaintiff's description of the events
of the night is as follows.

    The plaintiff was at Thunder Jacksons on the night of
August 25, 2014.  Lauderdale Dep. 35.  At some point in the
evening, he went outside to smoke a cigarette.  Id. at 40-41.
He stood under the bar's awning because it was raining.  Id.
While outside, the plaintiff overheard another individual, whom
he later identified as Rivera, loudly announcing that he had

drugs and was willing to sell them. Id. at 48-50. The
plaintiff asked Rivera to get out of his face. Id. The
plaintiff swears that he did not speak with anyone about
procuring drugs outside the bar that evening, nor did he see or
speak with UC 276 at any point during the night, although he
spoke with one person about buying a cigarette. Id. at 42-43.

When the plaintiff started to go back inside to get his
bag, he was grabbed by a plainclothes police officer. Id. at
43. The plaintiff asked why he was being stopped and the police
officer said "I don't even know what this is about, I was told
to come lock you up." Id. at 43-44. The police officer also
spoke into his shirt collar "let me find out if I got the right
one." Id. at 43. The police officer permitted the plaintiff to
retrieve his bag from the bar before placing the plaintiff in
handcuffs. Id. at 44-45. The officers then placed the
plaintiff in a van with Rivera and he was transported to the
police precinct and sent to Central Booking. Pl.'s Rule 56.1
Statement ¶ 16.

The plaintiff was arraigned on April 26, 2014 and charged
with one count of violating Public Health Law 3383(2), which
prohibits the manufacturing, sale, or possession with the intent
to sell of an imitation controlled substance. Bahrenburg Decl.
Ex. F; Georges Decl. Ex. H.

The plaintiff was acquitted at a bench trial on July 23, 2015. Pl.'s Rule 56.1 Statement ¶ 20; Georges Decl. Ex. I. UC 276, UC 279, and McCalla were the only witnesses at the trial. After finding the plaintiff not guilty, the Judge stated that he "found that all of the witnesses testified credibly." Trial Tr. 89 (Bahrenburg Decl. Ex. H).

In his third amended complaint, the plaintiff brings claims of false arrest, malicious prosecution, and denial of the right to a fair trial.[2] The defendants have moved for summary judgment on all claims.

## II.

The standard for granting summary judgment is well established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the

---

[2] At argument on the motion, the plaintiff asserted that he only maintains claims against UC 276 and Officer McCalla and dismissed the claims against all other defendants. The plaintiff had previously withdrawn his false arrest claim against Lieutenant Hyland and Detective Chess. Pl.'s Mem. Law Opp. Summ. J. 6 n.1.

6

litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if any evidence in the record from any source would enable a reasonable inference to be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may

7

not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." <u>Ying Jing Gan v. City of New York</u>, 996 F.2d 522, 532 (2d Cir. 1993).

**III.**

UC 276 and Officer McCalla move for summary judgment on the false arrest claim on the basis that they each had probable cause -- or arguable probable cause -- to arrest the plaintiff.

Section 1983 claims for false arrest are "substantially the same" as false arrest claims under New York law. <u>Weyant v. Okst</u>, 101 F.3d 845, 852 (2d Cir. 1996). In New York, false arrest claims require a showing that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." <u>Id.</u> at 853 (citations omitted); <u>see also</u> <u>Pelayo v. Port Auth.</u>, 893 F. Supp. 2d 632, 639 (S.D.N.Y. 2012).

An arrest of a criminal suspect by a law enforcement officer with probable cause is a "privileged" confinement even if it is non-consensual. <u>Decker v. Campus</u>, 981 F. Supp. 851, 856 (S.D.N.Y. 1997). Thus, for arrests by law enforcement officers, "[t]he existence of probable cause to arrest constitutes a complete defense to an action for false arrest, whether that action is brought under Section 1983 or state law." <u>Matthews v.</u>

8

City of New York, 889 F. Supp. 2d 418, 433 (E.D.N.Y. 2012)
(citation and internal quotation marks omitted); see also
Weyant, 101 F.3d at 852; Biswas v. City of New York, 973 F.
Supp. 2d 504, 515 (S.D.N.Y. 2013).

An officer has probable cause for an arrest when at the
time of the arrest "the facts and circumstances within [his]
knowledge and of which [he] had reasonably trustworthy
information were sufficient to warrant a prudent man in
believing that the [suspect] had committed or was committing an
offense." Beck v. Ohio, 379 U.S. 89, 91 (1964) (citation
omitted); see also Garrett v. City of New York, No. 10-cv-2689
(JGK), 2011 WL 4444514, at *4 (S.D.N.Y. Sept. 26, 2011). Once
the fact of a warrantless arrest has been established, the
burden is on the arresting officer to prove probable cause for
the arrest by a preponderance of the evidence. Garrett, 2011 WL
4444514, at *4.

Even if an officer did not have probable cause for an
arrest, the officer may still be shielded from liability for
false arrest under the doctrine of qualified immunity. Qualified
immunity protects government officials performing discretionary
functions, such as arrests, "from liability for civil damages
insofar as their conduct does not violate clearly established
statutory or constitutional rights of which a reasonable person

would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Plumhoff v. Rickard, 134 S. Ct. 2012, 2023 (2014); Ashcroft v. Iqbal, 556 U.S. 662, 672 (2009); Malley v. Briggs, 475 U.S. 335, 341 (1986) ("As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law."). "Requiring the alleged violation of law to be clearly established balances the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Wood v. Moss, 134 S. Ct. 2056, 2067 (2014) (citation and internal quotation marks omitted). As the Supreme Court has explained, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001) (citation omitted), overruled on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009).

In the case of an arrest, an officer is entitled to qualified immunity if the officer had "arguable probable cause" to make the arrest, which means that "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could

disagree on whether the probable cause test was met." Amore v. Novarro, 624 F.3d 522, 536 (2d Cir. 2010) (citation omitted). Arguable probable cause "focus[es] attention on the word 'clearly' established law" and shields an officer from liability "if reasonable officers could disagree as to what the law is." See Torraco v. Port Auth., 539 F. Supp. 2d 632, 651 (E.D.N.Y. 2008), aff'd, 615 F.3d 129 (2d Cir. 2010); see also McKay v. City of New York, 32 F. Supp. 3d 499, 505-06 (S.D.N.Y. 2014). See also Bennett v. Vidal, 267 F. Supp. 3d 487, 493-94 (S.D.N.Y. 2017).

## A.

The plaintiff argues that there are genuine disputes of material fact because -- contrary to the defendants' version of events -- he was not the individual who participated in the drug sale with UC 276 and Rivera. UC 276 and Officer McCalla respond that, even viewing the facts in the light most favorable to the plaintiff and assuming that the plaintiff was not the individual who spoke with UC 276 on the night in question, they had probable cause --or arguable probable cause -- to arrest the plaintiff based on a mistaken identification.

"If officers arrest an individual based on a mistaken identification, that arrest is still constitutionally valid if the police have probable cause to arrest the person sought and

11

the arresting officer reasonably believed that the arrestee was
that person." Martinez v. City of New York, 340 F. App'x 700,
701 (2d Cir. 2009) (summary order) (citing Hill v. California,
401 U.S. 797, 802-03 (1971)). "Mere misidentifications do not
undermine probable cause; police officers are entitled to make
reasonable mistakes when identifying suspects." Hewitt v. City
of New York, No. 09-cv-214 (RJD), 2012 WL 4503277, at *4
(E.D.N.Y. Sept. 28, 2012), aff'd, 544 F. App'x 24 (2d Cir.
2013).

### B.

With respect to UC 276, it is undisputed that he had
probable cause to arrest the individual with whom he spoke about
purchasing drugs, because that individual facilitated UC 276's
purchase of drugs from Rivera. Further, UC 276 reasonably
believed -- or at least officers of reasonable competence could
disagree about whether it was reasonable for UC 276 to
believe -- that the plaintiff was that individual when he made
the identification to the field team who arrested the plaintiff.

Following protocol for buy-and-bust operations, after
purchasing what he believed to be cocaine from Rivera, UC 276
gave a positive buy signal to UC 279 and walked across the
street. UC 276 Dep. 22, 31; UC 279 13-14, 16, 31-32. Based on
a description of the individuals' clothing and location provided

12

by UC 279, two members of the field team moved in and apprehended the plaintiff and Rivera. UC 279 13-14, 16, 24-25. From across the street, UC 276 looked back at the two individuals who were apprehended and positively identified them as the individuals with whom he discussed purchasing drugs. UC 276 Dep. 25; UC 279 Dep. 23. Additionally, after UC 276 made his positive identification, UC 279 joined UC 276 across the street and confirmed with UC 276 that the two individuals apprehended were the correct individuals. UC 279 Dep. 16-17; UC 276 Dep. 23. The identification was also made when it was raining hard in the early morning hours and amid a group of other people. Lauderdale Dep. 40-41.

The plaintiff does not dispute that he was in the same immediate vicinity around the same time when UC 276 talked with the individual about purchasing drugs and made the purchase. Lauderdale Dep. 35. Under these circumstances, UC 276's allegedly mistaken identification of the plaintiff as the individual who facilitated the drug purchase was not objectively unreasonable. See Bennett, 267 F. Supp. 3d at 494-95; Hargroves v. City of New York, 411 F. App'x 378, 385 (2d Cir. 2011) (summary order).

Moreover, the plaintiff has not pointed to any evidence indicating that UC 276's allegedly mistaken identification was

unreasonable. The plaintiff does not argue, for example, that he was wearing different clothes or was a different race from the individual with whom UC 276 was discussing drugs, or that he otherwise did not match the description that was given to the field team by UC 279 of the clothing that the individual was wearing and the individual's location. See UC 279 Dep. 24-25.

Essentially, the plaintiff's argument is that UC 276 could not have had probable cause to arrest him because he was not the person with whom UC 276 discussed purchasing drugs, and he did not commit any other crime on the night in question. But acceptance of such an argument "would swallow up the cases that have found [] probable cause despite a misidentification." See Bennett, 267 F. Supp. 3d at 495. An arrestee's argument -- or even demonstration -- that the identification was mistaken does not eliminate the showing of probable cause or arguable probable cause, because an officer is entitled to make a mistake in identifying a suspect so long as there was probable cause for the arrest of some individual and the mistaken identification was reasonable. Id.

Accordingly, UC 276 had arguable probable cause to arrest the plaintiff and is therefore entitled to qualified immunity on the plaintiff's claim for false arrest.

C.

    Officer McCalla argues that she is entitled to qualified immunity because she reasonably relied on the identification of the plaintiff by UC 276 and other members of the field team as the individual who participated in the drug sale to UC 276.

    "[A]n officer who participates in the arrest is . . . immune from suit in his or her individual capacity under the doctrine of qualified immunity if it was objectively reasonable for him to rely on a fellow officer's report indicating the existence of probable cause." Annunziata v. City of New York, No. 06-cv-7637, 2008 WL 2229903, at *4 (S.D.N.Y. May 28, 2008); see also Alicea v. City of New York, No. 13-cv-7073 (JGK), 2016 WL 2343862, at *5 (S.D.N.Y. May 2, 2016). Therefore, even where an arresting officer is "not . . . aware of all the underlying facts that provided probable cause or reasonable suspicion, [she] may nonetheless act reasonably in relying on information received by other law enforcement officials." United States v. Colon, 250 F.3d 130, 135 (2d Cir. 2001).

    After the two officers in the field team moved in and apprehended the plaintiff and Rivera, UC 279 reported to the field team -- including Officer McCalla -- that UC 276 had made a positive identification of the plaintiff as the individual with whom he was discussing a drug sale. UC 279 Dep. 13-14, 16;

McCalla Dep. 29-30. When Officer McCalla arrived on the scene after this identification, the plaintiff had already been arrested and was in handcuffs. McCalla Dep. 27; July 14, 2015 Wade Hr'g Tr. 28 (Georges Decl. Ex. B). There is no evidence that there was any reason for Officer McCalla to disbelieve or question the identification made by UC 276, reported to her by UC 279, which served as the basis for the field team's arrest of the plaintiff.

Therefore, Officer McCalla is entitled to qualified immunity on the false arrest claim because it was objectively reasonable for her to rely on the identification by UC 276 of the plaintiff as the individual who participated in the drug sale. See Alicea, 2016 WL 2343862, at *6 (holding that an officer was entitled to qualified immunity because he was "entitled to rely on the representations of his fellow officers" that the arrestee was the individual another officer observed engaging in a hand-to-hand drug transaction); Duncan v. Cardova, No. 10-cv-8089 (GBD), 2014 WL 12771128, at *19 (S.D.N.Y. Aug. 22, 2014), report and recommendation adopted, No. 10-cv-8089 (GBD), 2014 WL 12687784 (S.D.N.Y. Sept. 26, 2014) (holding that officers "were entitled to rely on the positive identification provided by UC 0059, a fellow law enforcement official, including an identification which may have later turned out to mistaken" (internal quotation marks and alterations omitted)).

16

Accordingly, Officer McCalla is entitled to qualified immunity on the plaintiff's claim for false arrest.

## IV.

The defendants also move for summary judgment dismissing the plaintiff's claim for malicious prosecution.

To establish a claim for malicious prosecution under § 1983, a plaintiff must establish the elements of a malicious prosecution claim under New York State law, as well as a violation of the plaintiff's rights under the Fourth Amendment. Manganiello v. City of New York, 612 F.3d 149, 160-61 (2d Cir. 2010). A claim for malicious prosecution under New York state law requires "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Id. at 161 (internal citation and quotation marks omitted). A claim for malicious prosecution under § 1983 requires the additional element of "(5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." Rohman v. N.Y. City Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000); Perez v. Duran, 962 F. Supp. 2d 533, 540 (S.D.N.Y. 2013). See also Bennett, 267 F. Supp. 3d at 496-97.

**A.**

The defendants argue that the malicious prosecution claim must be dismissed because the grand jury indictment creates a presumption of probable cause for the criminal prosecution, and the plaintiff has not offered any evidence rebut that presumption.

The existence of probable cause to commence a proceeding is a complete defense to a claim of malicious prosecution. See Shabazz v. Kailer, 201 F. Supp. 3d 386, 392 (S.D.N.Y. 2016). "[W]ell-established law in this Circuit requires this Court to apply a presumption of probable cause when there is a grand jury indictment." Bertuglia v. City of New York, 133 F. Supp. 3d 608, 626 (S.D.N.Y. 2015), aff'd sub nom. Bertuglia v. Schaffler, 672 F. App'x 96 (2d Cir. 2016). Thus, where there has been an indictment by a grand jury, in order to succeed on a claim for malicious prosecution, the plaintiff must show that "the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." Manganiello, 612 F.3d at 161-62.

The plaintiff argues that, accepting his facts as true, the defendants' statements to the prosecutor and the grand jury must have been intentional misrepresentations because he was not the individual who spoke with UC 276 and the defendants represented

18

that he was. But even accepting as true the plaintiff's contention that he was not involved in the drug sale, it does not necessarily follow that the officers made intentional false statements or misrepresentations to the prosecutor in bad faith when they reported that he was. Instead, the officers could have been honestly and reasonably mistaken when they represented to the prosecutor that the plaintiff was the individual who participated in the drug sale.

There is no evidence in the record to suggest that the misidentification was anything other than an honest mistake. Indeed, at the criminal trial, the officers all maintained that the plaintiff was the individual, and the Judge presiding over that trial specifically stated that he found the officer's testimony credible. Trial Tr. 89 (Bahrenburg Decl. Ex. H). Therefore, even accepting as true the plaintiff's version of events, there is no evidence that the officers lied or otherwise acted in bad faith when they represented to the prosecutor and the grand jury that the plaintiff was the individual who participated in the drug sale with UC 276.

The plaintiff also argues that Officer McCalla purposefully -- and in bad faith -- conformed parts of her testimony before the grand jury to match the testimony of UC 276 in order to obtain the indictment. At her deposition, Officer McCalla

testified that she observed UC 276 and the plaintiff walking back and forth between Thunder Jacksons and the bar next door when they were discussing the drug sale. However, before the grand jury Officer McCalla did not testify to this movement, but instead implied that UC 276 and the plaintiff remained under the awning at Thunder Jacksons during the entire time she observed them. UC 276 also testified that he remained under the awning during his entire interaction with the plaintiff. According to the plaintiff, the differences in Officer McCalla's testimony at her deposition and before the grand jury is evidence that Officer McCalla intentionally lied to the grand jury and the indictment was thereby procured by fraud.

But the testimony the defendant alleges Officer McCalla purposefully left out is unremarkable and collateral to the indictment. It is irrelevant to the crime charged whether UC 276 and the individual were walking back and forth between two bars or remained in front of Thunder Jacksons when they discussed the drug sale. This minor inconsistency in Officer McCalla's testimony is not significant enough to support an inference that she purposefully lied to the grand jury in order to obtain the indictment in bad faith.

Accordingly, because the plaintiff was indicted by a grand jury and has not offered evidence to rebut the resulting

presumption that there was probable cause for the prosecution, his claim for malicious prosecution must be dismissed.

## B.

The plaintiff's claim for malicious prosecution must also be dismissed because there was arguable probable cause for the arrest, entitling the defendants to qualified immunity.

"[A] malicious prosecution claim will be defeated by a finding of probable cause to arrest, unless the plaintiff can demonstrate mitigating facts to vitiate probable cause which were first uncovered after the arrest." Carson v. Lewis, 35 F. Supp. 2d 250, 263 (E.D.N.Y. 1999) (citation omitted); see also Cooper v. City of New Rochelle, 925 F. Supp. 2d 588, 611 (S.D.N.Y. 2013); Dukes v. City of New York, 879 F. Supp. 335, 342 (S.D.N.Y. 1995).

Similarly, an officer is entitled to qualified immunity against a claim of malicious prosecution if the officer had arguable probable cause to arrest the plaintiff. See Betts v. Shearman, 751 F.3d 78, 83 (2d Cir. 2014). "[B]ecause the focus of the qualified immunity inquiry is on the objective reasonableness of the defendant's actions, motivation does not come [into] play" when there is arguable probable cause. Bonide Prods., Inc. v. Cahill, 223 F.3d 141, 146 (2d Cir. 2000) (per curiam) (citation omitted). Thus, an officer who is objectively

reasonable in believing he has probable cause to arrest is
entitled to qualified immunity on a claim for malicious
prosecution "regardless of [any] allegations of malicious
motivation," id., as long as the officer does not learn of facts
after the arrest "that would negate his ... earlier
determination of probable cause," Cooper, 925 F. Supp. 2d at
611; see also McKay, 32 F.Supp.3d at 511.  See also Bennett, 267
F. Supp. 3d at 496-97.

    As discussed above, the defendants had arguable probable
cause to arrest the plaintiff.  There was no evidence presented
suggesting that the officers subsequently learned of facts after
the arrest that would negate their belief that they had arguable
probable cause to arrest.  In fact, the officers maintained at
the criminal trial that they believed that the plaintiff was the
individual who participated in the drug sale with UC 276, and
the Judge in that case specifically noted that he found the
officers to be credible.  Trial Tr. 89 (Bahrenburg Decl. Ex. H).
The officers are therefore entitled to qualified immunity
against the plaintiff's claim of malicious prosecution. See
McKay, 32 F. Supp. 3d at 511-12; Bennett, 267 F. Supp. 3d at
497.

## V.

The defendants also move for summary judgment on the plaintiff's claim for denial of a right to a fair trial.

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997); Jocks v. Tavernier, 316 F.3d 128, 138 (2d Cir. 2003); Jovanovic v. City of New York, 486 Fed. App'x 149, 152 (2d Cir. 2012) (summary order); see also O'Neal v. City of New York, 196 F. Supp. 3d 421, 428–29 (S.D.N.Y. 2016), aff'd sub nom. O'Neal v. Morales, 679 Fed. App'x 16 (2d Cir. 2017) (summary order). The Court of Appeals has held that a § 1983 plaintiff may sue an officer for denial of a right to fair trial based on the fabrication of evidence when the allegedly fabricated evidence "is the officer's own account of his or her observations of alleged criminal activity, which he . . . then conveys to a prosecutor." Garnett v. Undercover Officer C0039, 838 F.3d 265, 274 (2d Cir. 2016). Probable cause to arrest is not a defense to denial of a right to fair trial. Ricciuti, 124 F.3d at 130.

"In order to succeed on a claim for a denial of the right to a fair trial against a police officer based on an allegation that the officer falsified information, an arrestee must prove by a preponderance of the evidence that the officer created false information, the officer forwarded the false information to prosecutors, and the false information was likely to influence a jury's decision." Garnett, 838 F.3d at 279-80. See also Bennett, 267 F. Supp. 3d at 498.

The plaintiff contends that, rather than being mistaken, UC 276 and Officer McCalla intentionally lied to the prosecutors when they stated that the plaintiff was the individual who participated with UC 276 in a drug transaction. As evidence of fabrication, the plaintiff points only to the fact that his version of events -- in which he alleges that he was not the individual who spoke with UC 276 -- differs from the account given by UC 276 and Officer McCalla to the prosecutor. But a mere difference in the testimony of the plaintiff and the officers about what occurred on the day of the arrest is not sufficient evidence to create a genuine dispute of material fact as to whether UC 276 or Officer McCalla intentionally falsified information or fabricated evidence. See Hewitt, 2012 WL 4503277 at *6, *11 (granting summary judgment because the "[p]laintiff points ... to no evidence of ill will or malice on the part of the [officer]" and "no arguable motivation to fabricate"); see

also Greene v. City of New York, No. 08-cv-243 (AMD) (CLP), 2017 WL 1030707, at *25 (E.D.N.Y. Mar. 15, 2017), appeal filed, No. 17-1920 (2d Cir. June 16, 2017) (granting summary judgment on a denial of the right to a fair trial claim because the contention that officers deliberately falsified evidence was based on "sheer speculation, and [did] not create a material issue of fact for trial"); see also Bennett, 267 F. Supp. 3d at 498 (granting summary judgment dismissing right to a fair trial claim in the absence of evidence of deliberate misidentification).

In sum, this is not a case where the plaintiff has presented evidence indicating that an officer falsified information or fabricated evidence sufficient to defeat a motion for summary judgment. Cf., e.g., Robinson v. City of New York, No. 15-cv-5850 (LGS), 2017 WL 2414811, at *2 (S.D.N.Y. June 2, 2017) (denying summary judgment when witness signed two declarations recanting statement that he had bought drugs from the plaintiff and testified at his deposition that a police officer promised to release the witness from custody if the witness stated that he had purchased drugs from the plaintiff); Harris v. City of New York, 222 F. Supp. 3d 341, 351-52 (S.D.N.Y. 2016) (denying summary judgment after police officer told a prosecutor that the plaintiff "possessed" a weapon, even though the plaintiff did not have it on his person, and was not

wearing and denied owning the jacket in which it was found); see also Bennett, 267 F. Supp. 3d at 498.

In this case, all that the plaintiff has adduced, construing the evidence in the plaintiff's favor, is that the officers were mistaken in identifying him as the person involved in the drug sale. There is no evidence that the defendants deliberately misidentified the plaintiff and thereby fabricated a false identification for the prosecutor. See Bennett, 267 F. Supp. 3d at 499. There is no evidence that the officers presented knowingly false evidence to the prosecutor or the Court when they identified the plaintiff as the individual involved in the drug sale. See Trial Tr. 89 (Bahrenburg Decl. Ex. H) (Court finding that the officers testified credibly at the criminal trial).

Accordingly, the defendants' motion for summary judgment on the plaintiff's claim of denial of a right to fair trial is granted.

## VI.

The plaintiff withdrew his Monell claim at argument on this motion. That claim is therefore dismissed.

**CONCLUSION**

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the reasons explained above, the defendants' motion for summary judgment is **granted.** The Clerk is directed to enter judgment dismissing the complaint and closing the case.

Dated:    **New York, New York**
         **March 19, 2018**

                                      **John G. Koeltl**
                            **United States District Judge**